UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No.: |
| ) | |
| DR. SABIN EWING AND FIRST & ) | |
| FARMERS NATIONAL BANK, INC., ) | |
| ) | |
| ) | |
| **Defendants** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff ACE AMERICAN INSURANCE COMPANY (hereinafter "ACE"), pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, and submits the following Complaint for Declaratory Judgment, alleging as follows:

### Parties

1. Plaintiff ACE is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in 436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703.

2. Defendant DR. SABIN EWING (hereinafter "Sabin Ewing") is, upon information and belief, a resident of Rutherford County, Tennessee.

3. Defendant FIRST & FARMERS NATIONAL BANK, INC. (hereinafter "First & Farmers") is, or was at all times relevant hereto, a Kentucky Corporation with its principal place of business in Somerset, Kentucky.

1

## Jurisdiction and Venue

4. This court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5. This court also has jurisdiction pursuant to 28 U.S.C. §1333 in that this dispute arises from the interpretation of a certain marine insurance policy which necessarily invokes admiralty and maritime jurisdiction.

6. Venue is proper in the United States District Court for the Middle District of Tennessee in that the events giving rise to this action occurred in Rutherford County, Tennessee, and at least one of the defendants is a resident of Tennessee.

7. An actual case in controversy of a justifiable nature exists between the parties involving the rights and liabilities under a certain marine insurance policy, in which litigation is imminent and inevitable, and which controversy may be determined by a judgment of this, without other, action.

## General Allegations about Insurance Application and Policy

8. From July 27, 2012 until its rescission on or about May 28, 2013, ACE provided marine insurance coverage to Sabin Ewing under a Yachtsman Policy of Insurance (hereinafter "the Policy"). A true and correct copy of the Policy is attached hereto as Exhibit 1. The Policy attached as Exhibit 1 provided marine insurance coverage to Sabin Ewing and a 2008 110' Sunstar Houseboat with Hull Identification Number SNS00256C808 (hereinafter referred to as "the Vessel") for the periods July 24, 2013 to July 27, 2013, Policy Number YKR Y 08522327.

9. First & Farmers was named as a Loss Payee on the Policy's Declarations Page.

10. On or about August 11, 2009, Sabin submitted to ACE an application for marine insurance coverage for the Vessel. A true and correct copy of the application is attached hereto as Exhibit 2.

11. In this application, Ewing represented the following:

**INSURED INFORMATION**

| Policy to be Issued in the Name of: |
|---|
| Dr. Sabin Ewing |
| Address: |
| 739 Presidents Place Ste 210 |
| City: |
| Smyrna |

**OWNER/OPERATOR INFORMATION**

| Primary Owner's SSN | Owner's E-mail Address | Primary Owner/Beneficial Owner's Occupation: |
|---|---|---|
| XXX-XX | sabinewing@yahoo.com | Orthodontist |

12. In this application, Ewing further acknowledged as follows:

**Fraud Statement:** Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance containing any materially false information, or conceals for the purposes of misleading, information concerning a fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and [NY: substantial] civil penalties.

. . . .

**Applicant's Statement:** I certify that to the best of my knowledge all statements on this application are true. I understand and agree that the company may obtain from third parties information regarding me, my watercraft, and listed operators, including driving records, financial credit information and prior claims information. I understand that I have the right of access and correction with respect to all such information collected and that the company will provide further information regarding my statutory rights upon request.

3

13. As part of this application, Sabin Ewing also submitted an "Assignment and Assumption of Contract" dated July 13, 2009 which listed Randall Cross as the "Assignor" and Crotts Trust as the "Assignee." A true and correct copy of the Assignment and Assumption of Contract dated July 13, 2009 (hereinafter "the Contract") is annexed hereto as Exhibit 3.

14. The Contract states, *inter alia*, as follows:

... Assignee will pay $497,000.00 cash to Assignor. Additionally, the Assignee will assume the current primary lean [sic] holder's note of the Assignor in the amount of $448,000.00 with First and Farmers Bank out of Kentucky. It is understood that the duration of the note is 20 years and payments of $3,509.00 are due at the first of each month.

15. The Contract further states, *inter alia*, as follows:

Assignor hereby irrevocably conveys, transfers, sets over and assigns to Assignee (the "Assignment"), and its successors and assignees, all of the Assignor's right, title and interest in and to the Houseboat and its contents and all benefits arising thereunder or therefrom, such Assignment to take effect on the Assignment date (as herein defined).

16. Sabin Ewing also submitted to ACE a "Laying Up Afloat Questionnaire" dated May 24, 2010, annexed hereto as Exhibit 4, in which he made the following representation:

Question 5: Does location provide for daily inspection of the yacht to prevent sinking or damage from leaking and weight of snow or ice?

Answer: YES

17. In response to and reliance upon the information, documentation, and representations presented by Sabin Ewing, ACE issued a certain policy of marine insurance pursuant to the following terms and conditions:

The Named Insured Under This Policy:

4

Dr Sabin Ewing

Address:

739 Presidents Place Ste 210
Smyrna, TN 37167

. . . .

PART A: PROPERTY DAMAGE COVERAGE

. . . .

EXCLUSIONS: We do not provide coverage under PART A: PROPERTY DAMAGE COVERAGE for any loss or resulting damage from:

a. wear and tear, gradual deterioration, weathering, **neglect, lack of reasonable care or due diligence in the maintenance of the Insured Vessel**;

. . . .

GENERAL CONDITIONS AND EXCLUSIONS

. . . .

CHOICE OF LAW/CONFORMITY OF STATE LAW: **This Policy shall be construed in accordance with the General Maritime Law or Admiralty Rule.** If no General Maritime Law or Admiralty Rule applies, the law of the State appearing in your address as contained upon the Declarations Page will apply without regard to the conflict of laws provisions thereof . . . .

. . . .

PRIVATE PLEASURE USE ONLY: **This policy only provides coverage while the Insured Vessel is used for private pleasure purposes.** However, this limitation on use does not apply while you are operating or using the Insured Vessel to entertain business associates or clients or other types of use wherein no monetary or other directly related renumeration is received by you in relation to operation or use of the Insured Vessel.

. . . .

LAY-UP WARRANTY: It is expressly warranted by you that the Insured Vessel will be in Lay-up and out of commission for the period of time shown on the Declarations. **During the Lay-up period, the Insured Vessel must be maintained for the conditions reasonably expected during such period.** In addition, the Insured Vessel shall not be used or operated for any boating related activities or as living quarters during the Lay-up period.

5

. . . .

CONCEALMENT, MISREPRESENTATION OR FRAUD: All coverage provided by us will be voided from the beginning of the Policy Period in any case of fraud by you. **It is also void if you conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.**

DISHONEST, ILLEGAL OR INTENTIONAL ACTS: We do not pay for loss or damage caused by the dishonest, illegal or intentional acts of any Covered Person, or any person to whom the Insured Vessel is entrusted, regardless of whether or not such person is convicted of such an act by a criminal court.

. . . .

PAYMENT OF LOSS: We will pay for any claim of covered Property Damage or damage to Person Property you incur under this policy to the Named Insured, and any loss payee . . . .

However:

. . .

**c. the loss payee's rights are no greater than those of the Named Insured under this Contract.**

(emphasis added).

18. The Policy attached on or about July 27, 2009 and was renewed annually until the Policy at issue, which was in force from July 27, 2012 thru July 27, 2013.

### Sabin Ewing's Lawsuit against TN Department of Revenue

19. On or about December 17, 2010, Sabin Ewing filed suit in the Chancery Court for the State of Tennessee against Charles Trost, the Commission of Revenue for the State of Tennessee in order to prevent the Department of Revenue from collecting sales and use taxes in connection with his alleged purchase of the Vessel. In this lawsuit, Sabin Ewing submitted into evidence a letter from First & Farmers dated June 21, 2010, a true and correct copy of which is annexed hereto as Exhibit 5, which states, *inter alia*, as follows:

6

First & Farmers National Bank, Inc. has not provided permission to allow the transfer of the [Houseboat] to the Crotts Trust via re-documentation with the United States Coast Guard, and no bill of sale has been executed to the bank's knowledge. In order for the transfer to occur, the bank must agree to the transfer and note same as documented with the United States Coast Guard. An assumption of the note by the trust was rejected, and for the bank to agree to the transfer it will require Mr. Ewing to guarantee the note. He has refused to do so at this time.

**As it stands today, and according to the bank's documentation, Mr. Crotts continues to be the sole owner of the [Houseboat].** Our understanding is the Crotts Trust has taken possession of the [Houseboat] and its beneficiary, Sabin Ewing, is making monthly mortgage payments on behalf of Mr. Crotts. Negotiations regarding the guarantee of the note, and possible alternative financing with Mr. Ewing and the Trustee of the Trust, M. Ben Moore, II, are ongoing.

(emphasis added).

20. Sabin Ewing testified under oath that Randall Crotts never conveyed title for the Vessel as represented in the Contract. Sabin Ewing further testified that he requested First & Farmers convey title but that First & Farmers refused to do so unless he agreed to be personally responsible for the promissory note on the Vessel. Since Sabin Ewing never agreed to be personally liable on the promissory note, First & Farmers never conveyed title.

21. Sabin Ewing never disclosed the true nature of the Vessel's ownership and title to ACE.

22. First & Farmers knew Sabin Ewing did not own or possess title to the Vessel, and knew or should have known that this type of information must be disclosed to ACE as the marine insurer for the risk at issue.

23. In the lawsuit against the Tennessee Department of Revenue, Sabin Ewing submitted into evidence another Assignment and Assumption Contract which substantially differed from the version presented to ACE. A true and correct copy of this second version of the Contract is annexed hereto as Exhibit 6. In this second version of the Contract, Sabin Ewing

agreed to: (a) assume the Promissory Note of $448,000; (b) assume the outstanding tax lien of approximately $35,000 on the Houseboat; (c) make a payment of only $10,000 to Fire & Farmers to bring the note current; (d) provide dental care for Mr. Crotts; and (e) make monthly payments of $200 to Mr. Crotts for a period of sixty (60) months.

24. Sabin Ewing also submitted into evidence an affidavit which states that the fair market value of the Vessel was $420,000.00. A true and correct copy of the affidavit is annexed hereto as Exhibit 7. Upon information and belief, the $420,000.00 figure was a depreciated amount based upon the amount of consideration set forth in the second version of the Contract (Exhibit 6), and was not reasonably related to the $945,000 figure submitted to ACE as part of his insurance application (Exhibit 3).

25. In summary, Sabin Ewing represented that he was the owner of the Vessel and that he had paid consideration of $945,000 for the Vessel when he applied for marine insurance coverage with ACE. *See* Exhibits 2 and 3. In connection with his litigation with the Tennessee Department of Revenue, Sabin Ewing represented that paid only $448,000 for the Vessel and that title had never passed from Mr. Crotts, and that for the purposes of vessel registration with the U.S. Coast Guard, Mr. Crotts remained as the owner of the Vessel, not Sabin Ewing. *See* Exhibits 5, 6, and 7.

26. First & Farmers participated in, contributed to, and/or caused these misrepresentations which materially affected the risk undertaken by ACE by knowingly rejecting Sabin Ewing's request to transfer ownership or convey title to the Vessel.

### The January 16, 2013 Sinking of the Vessel

27. On or about January 16, 2013, the Vessel sank at its mooring at Cedar Creek Marina, located at 9120 Saundersville Road, Mount Juliet, Tennessee 37211. The water around

8

the Vessel was reported to be calm, with no wind or other adverse weather noted at the time of sinking.

28. ACE appointed surveyors to inspect the Vessel after the sinking and its surveyors discovered that none of the three (3) bilge pumps aboard the Vessel were properly operating. All of the bilge pumps had different operational settings and were supposed to be fully operational under either shore or battery power.

29. The lack of fully operational bilge pumps caused the Vessel to be unseaworthy.

30. Sabin Ewing failed to inspect or maintain the Vessel or any of its onboard equipment, including but not limited to its bilge pumps. Sabin Ewing did not repair all of the Vessel's bilge pumps or ensure that they were fully operational.

31. Sabin Ewing's failure to institute any inspection or maintenance program with respect to the Vessel's onboard equipment caused the Vessel to be unseaworthy.

32. The Vessel also had four (4) holes drilled into one of two (2) watertight bulkheads on the lower level. The purpose of the Vessel's watertight bulkheads was to prevent flooding from spreading throughout the entire lower level, and maintain the Vessel's buoyancy. Four (4) holes drilled into one of the two (2) supposedly watertight bulkheads subverted the very purpose and design of the Vessel's lower level.

33. All of the holes in the watertight bulkhead were clearly observable through a simple visual inspection of the lower level.

34. The drilling of holes in one of two (2) watertight bulkheads in the lower level caused the Vessel to be unseaworthy.

35. Sabin Ewing failed to inspect or maintain the Vessel's lower level, including but not limited to the watertight bulkheads. No attempt was ever made by Sabin Ewing to plug the holes or repair the bulkhead.

36. Sabin Ewing's failure to institute any inspection or maintenance program with respect to the Vessel's lower level caused the Vessel to be unseaworthy.

37. With respect to the Vessel's lay-up, Sabin Ewing did not arrange for a daily inspection of the Vessel, contrary to his representations in the ACE Laying-up Afloat Questionnaire. *See* Exhibit 4. In the Questionnaire, Sabin Ewing represented that the local marina would conduct daily inspections of the Vessel. Sabin Ewing never instructed the local marina to conduct daily inspections of any kind, and he or his agents did not perform daily inspections while the Vessel was laid up.

38. Sabin Ewing misrepresented the conditions of lay-up to ACE, and his failure to inspect the Vessel while laid up constitutes unseaworthiness.

39. Subsequent to the Vessel's sinking, ACE learned that Sabin Ewing did not purchase the Vessel for his personal use. Sabin Ewing rarely, if ever, operated the Vessel for his personal use. Instead, Sabin Ewing purchased the Vessel in order to resell it at a substantial profit. The only time the Vessel was ever operated was to show it to prospective buyers.

40. Sabin Ewing never disclosed to ACE that he intended to use the Vessel for a commercial purpose, rather than a personal, purpose.

41. Sabin Ewing breached his duty of utmost good faith, or ubberimae fidea, by failing to fully and voluntarily disclosing to ACE all facts material to the risk, whether or not inquired into by ACE.

42. Sabin Ewing misrepresented the Vessel's true ownership to ACE.

43. Sabin Ewing misrepresented the Vessel's title to ACE.

44. Sabin Ewing misrepresented the Vessel's commercial usage to ACE.

45. Sabin Ewing misrepresented the Vessel's valuation to ACE.

46. Sabin Ewing misrepresented that the Vessel would be inspected daily in ACE's Laying-up Afloat Questionnaire.

47. Based upon various misrepresentations made by Sabin Ewing, the Policy is void *ab initio*.

48. Based upon the various material misrepresentations made by Sabin Ewing, the Policy is void *ab initio*.

49. Sabin Ewing breached the Vessel's implied warranty of seaworthiness.

50. Based upon Sabin Ewing's breach of the Vessel's implied warranty of seaworthiness, the Policy is void *ab initio*.

51. The claims by Sabin Ewing are expressly excluded under the Policy.

52. Sabin Ewing failed to comply with the conditions of the Policy.

53. Sabin Ewing failed to comply with the implied and express warranties of the Policy.

54. First & Farmers participated in the misrepresentations concerning ownership or title to the Vessel because First & Farmers refused Sabin Ewing's request to transfer title from Randall Crotts. *See* Exhibit 5.

55. First & Farmers contributed to the misrepresentations concerning ownership or title to the Vessel because First & Farmers refused Sabin Ewing's request to transfer title from Randall Cross. *See* Exhibit 5.

56. First & Farmers caused the misrepresentations concerning ownership or title to the Vessel because First & Farmers refused Sabin Ewing's request to transfer title from Randall Crotts. *See* Exhibit 5.

57. The misrepresentations described herein were made with the actual intent to deceive and/or such misrepresentation increased the risk of loss to ACE. Therefore, such misrepresentations were material, and ACE is entitled to have the Policy declared void *ab initio*, and/or rescinded.

58. First & Farmers' rights are no greater than Sabin Ewing under the Policy.

59. The claims by First & Farmers are expressly excluded under the Policy.

60. ACE has no obligation to cover claims by Sabin Ewing under the Policy.

61. ACE has no obligation to cover claims by Crotts Trust under the Policy.

62. ACE has no obligation to cover claims by First & Farmers under the Policy.

## **Declaratory Judgment**

63. ACE repeats and realleges the allegations of paragraphs 1 through 61 as though fully set forth herein.

64. ACE seeks declaratory relief that it has no obligation to cover any claims by Sabin Ewing or First & Farmers because:

    (a) The Policy is void *ab initio*;

    (b) The claims are expressly excluded under the Policy;

    (c) Sabin Ewing failed to comply with the conditions of the Policies;

    (d) Sabin Ewing breached his duty of utmost good faith;

    (e) Sabin Ewing breached the implied warranty of seaworthiness;

    (f) The Vessel was deemed to be unseaworthy;

(g)    Sabin Ewing materially misrepresented the risk when seeking placement of insurance coverage from ACE;

(h)    First & Farmers has rights no greater than Sabin Ewing under the Policy;

(i)    First & Farmers participated, contributed or caused the misrepresentations of the risk to ACE; and

(j)    For such other reasons as may be shown at trial.

**WHEREFORE**, ACE prays the Court for the following relief:

(a)    To declare the Policy void *ab initio*;

(b)    To declare that ACE has no obligation under the Policy to cover claims lodged by Sabin Ewing;

(c)    To declare that ACE has no obligation under the Policy to cover claims lodged by First & Farmers;

(d)    To construe the Policy and declare that the claims lodged by Sabin Ewing are excluded;

(e)    To construe the Policy and declare that the claims lodged by First & Farmers are excluded;

(f)    To construe the Policy and declare that Sabin Ewing failed to comply with certain conditions or warranties;

(g)    To construe the Policy and declare that First & Farmers failed to comply with certain conditions or warranties;

(h)    To declare Sabin Ewing misrepresented materially the risk to ACE;

(i)    To declare the Vessel unseaworthy at the time of the loss;

(j) To declare that First & Farmers participated or otherwise contributed or caused the misrepresentations about the risk to ACE;

(k) To declare that ACE is entitled to recover its costs and expenses in this action, including reasonable attorney fees, as well as all costs incurred while dredging, recovering, surveying, inspecting, preserving and storing the Vessel; and

(l) For such other and further relief as this Court deems just and proper.

Dated this 9th day of January 2014.

Respectfully submitted,

Fred C. Statum III (TN Bar No.14495)
MANIER & HEROD
2200 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
(615) 244-0030
(615) 242-4203 (fax)
fstatum@manierherod.com

Attorney for Plaintiff
ACE American Insurance Company